## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| KORINE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02749-TLP-tmp |
| v. | ) | |
| | ) | |
| SEDGWICK CLAIMS MANAGEMENT | ) | |
| SERVICES INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Defendant Sedgwick Claims Management Services Inc. ("Sedgwick") moved to dismiss this case ("Motion to Dismiss"). (ECF No. 18.) Korine Bailey ("Plaintiff") responded in opposition. (ECF No. 33.) And Sedgwick replied. (ECF No. 34.) In June 2025, the Court heard oral argument on the Motion to Dismiss. (ECF No. 57.) For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

## BACKGROUND

### I.    Relevant Law

The Employment Retirement Income Security Act of 1974 ("ERISA") governs the group health plan here. And ERISA prohibits a group health plan from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual." 29 U.S.C. § 1182(b)(1). That said, a group health plan may "establish[] premium

1

discounts or rebates or modify[] otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." *Id.* § 1182(b)(2)(B). Programs of health promotion and disease prevention are called "wellness programs."

The Public Health Service Act ("PHSA"), which is incorporated into ERISA, provides requirements for wellness programs. *See* 29 U.S.C. § 1185d(a)(1). Relevant here, if receiving "a premium discount or rebate or other reward for participation in a wellness program" stems from an individual "satisfying a standard that is related to a health status factor" then the wellness program must meet five requirements. 42 U.S.C. § 300gg-4(j)(1)(c); *Id.* § 300gg-4(j)(3).

The first requirement concerns the value of the reward and the form it may take. And it specifies that a reward may take the form of an absence of a surcharge. 42 U.S.C. § 300gg-4(j)(3)(A) (emphasis added). The second requirement provides that "[t]he wellness program shall be reasonably designed to promote health or prevent disease." 42 U.S.C. § 300gg-4(j)(3)(B). As for the third requirement, "[t]he plan shall give individuals eligible for the program the opportunity to qualify for the reward under the program at least once each year." 42 U.S.C. § 300gg-4(j)(3)(C).

The fourth requirement is the one most at issue here. It states: "The full reward under the wellness program shall be made available to all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(D). To meet the fourth requirement, the wellness program must allow for a reasonable alternative standard to individuals for whom it is either "unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard" or "medically inadvisable to attempt to satisfy the otherwise applicable standard." *Id.* The fifth and last requirement for a wellness program is the notice requirement, which, requires that the plan or issuer "disclose in all

plan materials describing the terms of the wellness program the availability of a reasonable

alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E).

In addition, there is a regulation in play here, which the Department of Labor (DOL)

issued in 2013. *See* 29 C.F.R. § 2590.702. Unlike the PHSA, the DOL regulation delineates

between outcome-based wellness programs and activity-only wellness programs. As alleged by

Plaintiff, Sedgwick's program is outcome based. And under the DOL regulation, an outcome-

based wellness program "does not violate the provisions of this section only if all of the …

requirements are satisfied." *See* 29 C.F.R. § 2590.702(f)(4). It then lists five requirements. *See*

*id.*

In some respects, the DOL regulation's requirements are the same as the PHSA's

requirements for wellness programs. But in some ways, the regulation's requirements are

stricter. For example, for outcome-based programs, the regulation requires that a reasonable

alternative standard be made available to "any individual who does not meet the initial standard,"

rather than only to those individuals medically unable to meet the initial standard. *Compare* 29

C.F.R. § 2590.702(f)(4)(iv), *with* 42 U.S.C. § 300gg-4(j)(3)(D).

For this Motion to Dismiss, the most relevant difference between the regulatory provision

on outcome-based programs and the PHSA is found in the notice requirements. Under the

regulation, "[t]he plan or issuer must disclose in all plan materials describing the terms of an

outcome-based wellness program … the availability of a reasonable alternative standard to

qualify for the reward…, including contact information for obtaining a reasonable alternative

standard *and a statement that recommendations of an individual's personal physician will be*

*accommodated*." *See* 29 C.F.R. § 2590.702(f)(4)(v). The PHSA's disclosure requirement says

nothing about including such a statement. *See* 42 U.S.C. § 300gg-4(j)(3)(E). Given the above differences, the Parties argue over whether the PHSA and the regulation conflict.

Besides the statutes and regulation discussed above, there are two pieces of guidance to add to this overview of the legal landscape. In the preamble to the regulation discussed above, the DOL addressed a hypothetical situation similar to (but not the same as) the one before the Court. 78 Fed. Reg. 33158, at 33163. The example relates to a time when an individual satisfies the reasonable alternative standard a couple of months into the year. *Id.* It provides:

> First, in order to satisfy the requirement to provide a reasonable alternative standard, the same, full reward must be available under a health-contingent wellness program (whether an activity-only or outcome-based wellness program) to individuals who qualify by satisfying a reasonable alternative standard as is provided to individuals who qualify by satisfying the program's otherwise applicable standard. *Accordingly, while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)* Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the individual receives the full amount of the reward. In some circumstances, an individual may not satisfy the reasonable alternative standard until the end of the year. In such circumstances, the plan or issuer may provide a retroactive payment of the reward for that year within a reasonable time after the end of the year, but may not provide pro rata payments over the following year (a year after the year to which the reward corresponds).

*Id.*

Then in 2014, shortly after the DOL issued the regulation at issue, the DOL provided this guidance with an answer to a frequently asked question:

> If a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoiding the tobacco premium surcharge) under the program, the plan is not

required (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan year. Nothing, however, prevents a plan or issuer from allowing rewards (including pro-rated rewards) for mid-year enrollment in a wellness program for that plan year.

U.S. Dep't of Lab., *FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation*, at 6 (Jan. 9, 2014), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-18.pdf.

Now that the Court has summarized relevant law, it turns to the facts of this case.

## II.    Factual Background

Sedgwick offers a health insurance plan for its employees called the Sedgwick Welfare Benefits Plan ("Plan"). The Plan is governed by ERISA. As part of the Plan, Sedwick imposes a tobacco surcharge on employees who are tobacco users and receive health insurance through the Plan. (ECF No. 1 at PageID 2, 5.) Each year during open enrollment, employees attest whether they use tobacco or not. (*See* ECF No. 18-3 at PageID 95.) In 2024, Sedgwick charged those tobacco users a surcharge in the amount of $50 per pay period or $1,300 per year, with a $150 cap per family per pay period. (ECF No. 1 at PageID 2, 5.) Plaintiff is a Sedgwick employee who pays this surcharge as part of her health insurance. (*Id.* at PageID 3.)

Important to this case, Sedgwick also offers a tobacco cessation program called "Quit for Life" to Plan participants. (*Id.* at PageID 7.) And Sedgwick contends that Quit for Life is a "reasonable alternative standard" under ERISA and the wellness program regulations mentioned above. (ECF No. 18-1 at PageID 68.) So in Sedgwick's view, Quit for Life is a reasonable alternative standard Plan participants can satisfy rather than meeting the initial health standard of being tobacco free.

If an employee completes Quit for Life by June 30th of a calendar year, then Sedwick stops charging the surcharge for the rest of the year and it refunds the surcharges paid earlier in the year to the employee.  (ECF No. 1 at PageID 7.)  But if an employee completes Quit for Life after June 30th, that employee no longer pays the surcharge for the rest of the year, but Sedwick does not refund the surcharges paid earlier in the year.  (*Id.*)  For employees who are newly hired or newly enrolled in benefits, Sedwick does not subject them to the tobacco surcharge until the next year.  (ECF No. 18-3 at PageID 95.)

Plaintiff sues here, both individually and on behalf of all other similarly situated individuals as a class action under Federal Rule of Civil Procedure 23, and alleges that Sedgwick's tobacco surcharge violates ERISA.  (ECF No. 1.)  Plaintiff alleges numerosity, commonality, typicality, and that she will adequately represent and protect the interests of the class.  (*Id.* at PageID 11–13.)  Plaintiff also alleges that "[a] class action is superior to other methods for the fair and efficient adjudication of this controversy" and that the injunctive, declaratory, and equitable relief sought would generally apply to the entire class.  (*Id.* at PageID 11–13.)

In Count 1, Plaintiff asserts that the tobacco surcharge violates ERISA's anti-discriminatory provisions.  (*Id.* at PageID 14–15.)  In Count II, Plaintiff asserts that Quit for Life does not qualify as a reasonable alternative standard, and so the Plan materials fail to notify Plan participants of a reasonable alternative standard.  (*Id.* at PageID 15–17.)  Elsewhere in the Complaint, Plaintiff asserts that Sedgwick failed to notify plan participants that recommendations of an individual's personal physician will be accommodated.  (*Id.* at PageID 2.)  Next, in Count III, Plaintiff claims that Sedgwick, as the Plan administrator, breached its fiduciary duties to Plan participants.  (*Id.* at PageID 17–18.)  Lastly, although not included in a

particular count, Plaintiff alleges that Sedgwick imposes higher premiums for supplemental life insurance and dependent life insurance based on tobacco use, which Plaintiff asserts further violates ERISA's anti-discrimination provisions. (*Id.* at PageID 8.)

As a result of these alleged violations, Plaintiff seeks  class certification; a declaratory judgment that the tobacco surcharge violates ERISA's antidiscrimination provisions; a declaratory judgment that Sedgwick breached its fiduciary duties in violation of ERISA; orders requiring Sedgwick to reimburse all persons who paid the tobacco surcharge within the applicable limitations period and to provide an accounting of all prior payments of the tobacco surcharge; declaratory and injunctive relief enjoining Sedgwick from further violating any duties, responsibilities, or obligations imposed on it by ERISA and ordering it to remit all previously collected surcharges; disgorgement of any benefits or profits received because of the violations of ERISA; restitution for all amounts owed to the participants in the Plan and any unjust enrichment obtained by Sedgwick; relief to the Plan; pre-judgment interest on any amounts awarded; attorneys' fees, expenses and taxable costs; and any other relief the Court deems just and proper. (*Id.* at PageID 18–20.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint have a "short and plain statement of the claim showing that the pleader is entitled to relief" and giving the defendant fair notice of the claim and the grounds for the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face when the

7

plaintiff pleads facts sufficient to allow the ruling court to draw "the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).

When deciding whether a claim is plausible, the ruling court may rely on its own

"judicial experience and common sense." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009)).  The ruling court must accept all factual allegations as true.  *See id.*  But it need not

accept a plaintiff's legal conclusions or make unreasonable inferences in favor of a plaintiff.  *See

id.*; *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).  What is more, when reviewing a

motion to dismiss, the ruling court generally restricts its review to the face of the complaint.

*Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022).  Still, in reviewing a motion

to dismiss, "a court may consider exhibits attached to the complaint, public records, items

appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so

long as they are referred to in the complaint and are central to the claims contained therein."

*Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024).

To survive a motion to dismiss for lack of subject matter jurisdiction under Federal Rule

of Civil Procedure 12(b)(1), a plaintiff must demonstrate that they have standing to bring each of

their claims.  *See State by & through Tennessee Gen. Assembly v. United States Dep't of State*,

931 F.3d 499, 507 (6th Cir. 2019).  The analysis under this rule is different from a 12(b)(6)

motion because a 12(b)(1) motion challenges a federal court's authority to decide a case, while a

12(b)(6) motion challenges whether the plaintiff has pleaded a cognizable claim upon which

relief can be granted.  *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 517 (6th Cir. 2006)

(quoting 5B Wright & Miller's Federal Practice & Procedure § 1350 (3d ed. 2004)).  "When

ruling on a motion to dismiss for lack of standing ... the district court must accept all material

allegations of the complaint as true." *Hawkins v. Richter*, No. 17-1968, 2018 WL 4042465, *2

(6th Cir. July 6, 2018) (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir.

2012); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002)).

    The district court must also "construe the complaint in favor of the complaining party."

*Warth v. Seldin*, 422 U.S. 490, 501 (1975). And "[t]o adequately allege jurisdiction, the

complaint 'must contain non-conclusory facts which, if true, establish that the district court had

jurisdiction over the dispute.'" *Hawkins*, 2018 WL 4042465 at *2 (quoting Carrier Corp. v.

Outokumpu Oyj, 673 F.3d 430, 440 (6th Cir. 2012)). The district court has the power to permit

or require the plaintiff to supply further particularized factual allegations that would support their

standing, and if after this opportunity, the plaintiff has not adequately demonstrated standing, the

complaint must be dismissed. *Warth*, 422 U.S. at 501–02; Fed. R. Civ. P. 12(h)(3).[1]

---

[1] Under Federal Rule of Civil Procedure 12(b)(1), the legal standard generally depends on whether the movant has made a facial or factual challenge. *See Carrier Corp. v. Outokumpu* 673 F.3d 430, 440 (6th Cir. 2012). A facial challenge asserts that the allegations in the complaint do not provide subject matter jurisdiction. *Enriquez-Perdomo v. Newman* 54 F.4th 855. 861 (6th Cir. 2022) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). Whereas a factual challenge asserts that the underlying factual basis for subject matter jurisdiction does not exist, and the movant supports the assertion with extrinsic evidence. *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). The Sixth Circuit case law is unclear about whether this dichotomy applies when a 12(b)(1) motion is challenging a plaintiff's standing. *Compare Hawkins v. Richter*, No. 17-1968, 2018 WL 4042465, *2 (6th Cir. July 6, 2018), *with W6 Restaurant Grp., Ltd v. Loeffler* 140 F.4th 344, 349 (6th Cir. 2025). In *Hawkins*, the Sixth Circuit relies on a line of cases that use the Supreme Court's articulation of the 12(b)(1) motion to dismiss standard in *Warth*. The *Hawkins* court then states that all challenges to standing and all facial 12(b)(1) challenges use that standard. *Hawkins*, 2018 WL 4042465 at *2 (citing *Courtney v. Smith* 97 F.3d 455, 459). At other times, the Sixth Circuit has analyzed whether a standing challenge was made facially or factually, and recently, the Court applied the plausibility standard from *Twombly* and *Iqbal* for 12(b)(6) motions to facial challenges to standing. *Savel v. MetroHealth System* 96 F.4th 932, 939 (6th Cir. 2024) (citing *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021). Sedgwick asserted here that their 12(b)(1) motion constitutes a factual challenge to Plaintiff's standing. (ECF No. 18-1 at PageID 66, note 8). This Court has applied the legal standard above, which treats all challenges to standing as facial challenges, since it is based on clear guidance from the Supreme Court. Even so, Sedgwick's basis for asserting a factual challenge is that Plaintiff

<u>**ANALYSIS**</u>

**I.    Standing**

Under Article III of the Constitution, federal courts have jurisdiction only over "Cases" and "Controversies." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024); U.S. Const. art. III, § 2.  And "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  For standing, a plaintiff must show "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA*, 602 U.S. at 380 (2024).  The injury in fact must be concrete, particularized, and actual or imminent.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Importantly here, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC* 594 U.S. at 431 (2021).  In addition, "[t]here is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020).  With this in mind, the Court now takes up Sedgwick's standing arguments.

**A.    Tobacco Surcharge**

Sedgwick argues that Plaintiff lacks standing to sue over the tobacco surcharge because Plaintiff has not suffered an injury-in-fact.  To support this position, Sedgwick points out that

---

never enrolled in the Quit for Life program, while the rest of its standing challenges question Plaintiff's allegations in the Complaint.  (*See Id.* at PageID 66–68.)  Whether Plaintiff has ever enrolled in the Quit for Life program does not affect standing because the injury alleged is paying the allegedly unlawful surcharge.  (*See* ECF No. 1.)  Therefore, even if factual challenges to standing are permissible, applying the *Warth* standard works here because Sedgwick's factual challenge (that Plaintiff did not enroll) does not reach Plaintiff's asserted basis for standing (that she paid the surcharge).

Plaintiff "does not allege that she ever enrolled in the Quit for Life educational program, took the program, completed the program, or completed the program after June 30." (ECF No. 18-1 at PageID 66–67.) And Sedgwick asserts that Plaintiff lacks standing to bring her failure to notify claim. (*Id.*) To that end, Sedgwick argues that Plaintiff "fails to allege she would have enrolled in the Quit for Life program had Sedgwick's communications regarding the program been any different." (*Id.*)

Like other district courts around the country addressing similar arguments, Sedgwick's arguments do not persuade the Court. *See Bokma v. Performance Food Group*, 783 F.Supp.3d 882, 892–95 (E.D. Va. 2025); *Mehlberg v. Compass Group USA, Inc.*, Case No. 24-cv-04179, 2025 WL 1260700, at *5–8 (W.D. Mo. Apr. 15, 2025); *Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *8–12 (D. Minn. July 29, 2025); *Lipari-Williams v. Mo. Gaming Co., LLC*, 339 F.R.D. 515, 524 (W.D. Mo. 2021). For a wellness program like Sedwick's to be lawful, it must satisfy all the relevant requirements. *See* 42 U.S.C. § 300gg-4(j)(3) ("If any of the conditions for obtaining a premium discount, rebate, or reward under a wellness program as described in paragraph (1)(C) is based on an individual satisfying a standard that is related to a health status factor, the wellness program shall not violate this section if the following requirements are complied with."); 29 C.F.R. § 2590.702(f)(4) ("A health-contingent wellness program that is an outcome-based wellness program, as described in paragraph (f)(1)(v) of this section, does not violate the provisions of this section only if all of the following requirements are satisfied."). So if its program does not meet the relevant requirements, Sedgwick cannot impose a surcharge on tobacco users, which would mean the tobacco surcharge that Plaintiff has been paying is illegal. And with this, Plaintiff alleges an injury-in-fact. Put differently, if the surcharge is illegal, it matters not whether Plaintiff can get

11

out of paying it and whether she knew of those steps.  Rather Plaintiff has the right to not to be charged an illegal surcharge in the first instance.

Relatedly, Sedgwick asserts that Plaintiff's failure to notify claims are "informational injuries," requiring her to show "downstream consequences" to support standing.  (ECF No. 18-1 at PageID 66–67; ECF No. 34 at PageID 409–11.)  Sedwick's assertion also arises from a misunderstanding of Plaintiff's alleged injury.  Plaintiff need not assert "downstream consequences" here because Plaintiff is not alleging that the failure to notify injured her.  Instead, she alleges that the failure to notify, as explained above, would make the surcharge itself illegal.  And so, Plaintiff alleges that, by paying the allegedly unlawful surcharge, she has suffered a direct injury.

Plaintiff also alleges claims, individually and on behalf of the Plan, that Sedgwick has breached its fiduciary duties in many ways: by administering a Plan that does not conform with ERISA's anti-discrimination provisions, by assessing and collecting the allegedly unlawful tobacco surcharge, by retaining the monies collected, by commingling said monies with its other assets to allegedly unjustly enrich itself at the expense of the Plan itself, by failing to review the Plan terms and materials for their compliance with ERISA's regulatory scheme, and by failing to communicate information to Plan participants as required by ERISA.  (*See* ECF No. 1 at PageID 17–18.)  These claims all depend on whether Sedgwick has violated ERISA through its imposition of the tobacco surcharge.  As a result, Plaintiff has standing to bring the breach of fiduciary duty claims because her alleged concrete and particularized injury is, once again, paying the unlawful surcharge.

Sedgwick asserts that Plaintiff cannot bring her fiduciary duty claims as a representative of the Plan pursuant to 29 U.S.C. § 1132(a)(2) because she has not suffered a concrete and

particularized injury herself.  (ECF No. 18-1 at PageID 67–68 (citing *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020)).  This argument is also unpersuasive.  The Supreme Court in *Thole* stated that to assert standing as a representative of a plan pursuant to § 1132(a)(2), a plaintiff "must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute."  *Thole v. U. S. Bank N.A*, 590 U.S. 538, 543 (2020) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (internal quotation marks omitted); *cf. Gollust v. Mendell*, 501 U.S. 115, 125–26 (1991) (suggesting that shareholder must "maintain some continuing financial stake in the litigation" in order to have Article III standing to bring an insider trading suit on behalf of the corporation); *Craig v. Boren*, 429 U.S. 190, 194–95 (1976) (vendor who "independently" suffered an Article III injury-in-fact could then assert the rights of her customers)).  Plaintiff here alleges that she has paid an unlawful surcharge and therefore has an individual injury-in-fact.

What is more, Plaintiff alleges that Sedgwick caused the injury and can redress the injury.  (ECF. No. 1 at PageID 14–20).  Simply put, Sedgwick imposed the surcharge and can refund it, and it can operate in compliance with ERISA's mandates going forward.  So Plaintiff has standing to bring her claim that the tobacco surcharge violates ERISA, her failure to notify claims, and her breach of fiduciary duty claims, too.

## B.    Life Insurance

Sedgwick also argues that Plaintiff lacks standing to pursue any claim related to the supplemental and dependent life insurance premiums.  (ECF No. 18-1 at PageID 67.)  On this point, the Court agrees with Sedgwick.  Indeed, Plaintiff has not alleged that she is enrolled in

these benefits or that she plans to enroll in these benefits.  So Plaintiff has not alleged that she

has suffered an injury-in-fact related to the life insurance premiums.[2]

And Plaintiff's arguments to the contrary fall flat.  Plaintiff asserts that *Larson v. Allina*

*Health Sys.* and *Braden v. Wal-Mart Stores, Inc.* hold that once a plaintiff shows she has standing

to bring any ERISA claim, that allows her to challenge systemic failures in administering the

plan, even if the programs challenged do not injure the plaintiff individually.  (*See* ECF No. 33 at

PageID 13.)  But Plaintiff misreads the case law.

In *Braden*, the Eight Circuit allowed a plaintiff, who had established standing, to seek

relief on behalf of coworkers, who had been employed before the time in which the plaintiff was

employed and a member of the challenged plan, for the same injury that the plaintiff himself had

suffered.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 589–94 (8th Cir. 2009).  Expansive

language aside, this case is properly read to allow plaintiffs to sue on behalf of a plan and

challenge conduct that, while personally injuring the plaintiff, also injures other participants in

the plan.  *See also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998).[3]

---

[2] The Court need not reach Sedgwick's argument that Plaintiff cannot show causation here either
because Sedgwick does not set the rates for the supplemental and dependent life insurance
premiums.

[3] The court in *Fallick* held that after a trial court finds standing under ERISA, it must then
consider the factors in Rule 23 to assess whether the plaintiff may sue for absent class members.

Thus, in the instant matter, once the district court correctly determined that Fallick
had standing to bring suit under ERISA against Nationwide with respect to its
application of reasonable and customary limitations to its determination of medical
benefits—a methodology which, by Nationwide's own admission, it employs in all
the benefits plans which Fallick wishes to include under the aegis of the proposed
class—the court should then have analyzed whether Fallick satisfied the criteria
of Rule 23 with respect to the absent class members. Where, as here, the crux of an
ERISA plaintiff's complaint concerns the methodology used to determine benefits,
courts have recognized that the standing-related provisions of ERISA were not
intended to limit a claimant's right to proceed under Rule 23 on behalf of all
individuals affected by the challenged conduct, regardless of the representative's
lack of participation in all the ERISA-governed plans involved.

*Braden* does not suggest that once a plaintiff demonstrates standing to challenge one portion of a plan, that then gives them standing to challenge any provision of a plan on behalf of all the participants.

In *Larsen*, plaintiffs brought breach of fiduciary duties claims as representatives of the plan against their employer for its management of the employee retirement plan that it offered. *Larson v. Allina Health Sys.*, 350 F.Supp.3d 780, 791–93 (D. Minn. 2018). The retirement plan offered three investment program options, and the district court ruled that the plaintiffs had standing to challenge not only alleged breach of fiduciary duties in the management of the investment program in which they had invested but also for breaches of fiduciary duties in the management of the other two programs, even though that had not injured the plaintiffs personally. *Id.* Respectfully, the reasoning in *Larsen* is not persuasive here. The *Larsen* court cited both *Braden* and *Fallick* but disregarded both cases' ruling that plaintiffs can only bring representative suits to challenge conduct that injures them individually. *Id.* at 792. And the conclusion drawn by the *Larsen* court stands in tension with the Supreme Court's directive in *TransUnion* that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek ...." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Finally, the *Larsen* Court looks only to other district courts in the Eighth Circuit to support its interpretation of standing doctrine, pointing to no decisions that have precedential effect on this Court. *Larson*, 350 F.Supp.3d at 791–93.

---

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). The plaintiff in Fallick, after showing standing to challenge the methodology their employer used to determine medical benefits, was able to challenge that methodology in any plan, even those in which they were not a participant, and on behalf of a class of participants. The Sixth Circuit has thus authorized plaintiffs to challenge only the conduct that injures them individually in a representative capacity.

The Court therefore lacks subject matter jurisdiction for any claim about the life insurance premiums. The Court therefore **DISMISSES WITHOUT PREJUDICE** any claim related to the supplemental and dependent life insurance premiums.

## II.    Validity of the Regulation

As a preliminary matter, Sedgwick has at times questioned the validity of the regulation at issue. That said, Sedgwick did not make an explicit argument that the regulation is invalid in its Motion to Dismiss.[4]  (*See* ECF No. 18-1.)  Instead, where Sedgwick really brings up this issue is in its Reply brief.  (ECF No. 34 at PageID 413–15;) *Malin v. JPMorgan*, 860 F.Supp.2d 574, 577 (E.D.Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'") (quoting *Cooper v. Shelby Cnty.,* No. 07–2283–STA–cgc, 2010 WL 3211677, at *3 n. 14 (W.D.Tenn. Aug. 10, 2010)).  In the Reply, Sedgwick argued that the regulation and the PHSA conflict and contended that "[a] valid statute always prevails over a conflicting regulation, and a regulation can never trump the plain meaning of a statute."  (*Id.* at PageID 414 (citation omitted).)  Also in its Reply, Sedgwick drew upon a recent Sixth Circuit case[5] that cited *Loper Bright* to argue that "[t]his Court's interpretation of the statute controls and is the starting point of the Court's analysis."  (*Id.*)

---

[4] In the Motion to Dismiss, Sedgwick made a passing reference to *Loper Bright* and primarily relied on the PHSA rather than the regulation.  (See ECF No. 18-1 at PageID 71.)  About Plaintiff's argument that Sedgwick would need to reimburse Plaintiff even if she completed Quit for Life in December of any given year, Sedgwick writes that "[t]his is clearly not the 'best' read of ERISA" and cites *Loper Bright*.  (*Id.*)  But this reference is not enough to raise a *Loper Bright* challenge.  (*Id.*)  Indeed, with this argument, Sedwick does not challenge the agency's ability to promulgate the regulations.  (*Id.*)

[5] *Moctezuma-Reyes v. Garland*, No. 23-3561, 2024 U.S. App. LEXIS 32444, at *10-11 (6th Cir. Dec. 23, 2024).

Sedgwick's position in its Reply seems to be that the DOL regulation and the PHSA conflict over when a wellness plan must offer the reasonable alternative standard. (ECF No. 34 at PageID 414.) The PHSA requires only that wellness programs allow for reasonable alternative standards for individuals *who cannot meet the initial health standard for medical reasons*, while the DOL regulation requires that outcome-based wellness programs make a reasonable alternative available to any individual *who does not meet the initial health standard*. (*Id.*)[6] In its Reply, Sedgwick also contends that the PHSA and the regulation conflict because the regulation requires that plan materials discussing the wellness program include a statement about a physician's accommodation, while the PHSA includes no such requirement. (*Id.* at PageID 415.)

At the oral argument for the Motion to Dismiss, counsel for Sedgwick explained its position on this issue. And counsel pointed to the two alleged conflicts set out above and then referred to the case law cited in Sedgwick's Reply brief. Sedgwick then clarified its position, explaining that, in its view, if the regulation and PHSA contradict, the PHSA governs. But counsel for Plaintiff argued that the PHSA and the regulation do not conflict. Rather, according to Plaintiff, the regulation clarifies the standard for outcome-based programs, as Congress properly authorized the DOL to do.

For starters, Sedgwick has failed to argue with any detail how the DOL lacked authority to issue the regulation. Sedgwick has merely made passing references to *Loper Bright* with little

---

[6] The Court recognizes that there is a valid argument over whether the statutory requirement and the regulatory requirement conflict. But whether Plaintiff was part of the class of individuals whom Sedgwick needed to provide with a reasonable alternative standard is not in dispute. So the validity of the regulatory requirement is immaterial to the Court's analysis here.

analysis.  Rather the core of Sedgwick's position is that the language in the regulation and the statute conflict, so the statute must trump the regulation.

But, based on the arguments made to date, the Court is not convinced at this stage that the PHSA and the regulation differ in a material way.[7]  *See also Bokma v. Performance Food Group*, 783 F.Supp.3d 882, 907(E.D. Va. 2025) ("The Court finds no contradiction or conflict between the ERISA statute, which explicitly incorporated Section 2705 of the PHSA, and the DOL regulations, which also address the wellness program requirements articulated in Section 2705.").  Indeed, Sedgwick glosses over the possibility that, rather than conflicting with the PHSA, the regulatory framework properly fills in its details and clarifies the requirements for outcome-based programs.  *Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *10 (D. Minn. July 29, 2025) ("But the bare fact that regulations 'fill up the details' of a statutory scheme does not render those regulations invalid under *Loper Bright*.") (citing *Loper Bright*, 603 U.S. 369, 395 (2024))); *See Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).  To that end, Sedgwick ignores the language from the relevant section of the PHSA which states that "[n]othing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section."  42 U.S.C. § 300gg-4(n); *see also* 29 U.S.C. § 1191c ("The Secretary, consistent with section 104 of the Health Care

---

[7] It is a close call on whether Sedgwick waived this sort of argument for failing to raise it earlier.  Indeed, this is not an issue Sedgwick raised in its Motion to Dismiss.  In fact, Sedgwick did not even move to dismiss Plaintiff's claim that Plan materials failed to disclose that a physician's recommendation will be accommodated.  Besides, Sedgwick raised this point in its Reply brief, and counsel for Sedgwick contended at oral argument that the regulation and PHSA conflict.  That said, the discussion at oral argument with Sedgwick's counsel was in essence just what the short section of the Reply brief said.

Portability and Accountability Act of 1996, may promulgate such regulations as may be necessary or appropriate to carry out the provisions of this part.").

For all that, Sedgwick may raise these sorts of arguments again, with more robust analysis, at later stages of the litigation and the Court will revisit these questions then. The Court next turns to the tobacco surcharge itself.

## III.    Tobacco Surcharge

Under both the PHSA and the relevant regulation, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv); 42 U.S.C. § 300gg-4(j)(3)(D) ("The full reward under the wellness program shall be made available to all similarly situated individuals."). The Parties disagree on whether "full reward" includes retroactive reimbursement. (*Compare* ECF No. 33 at PageID 396, *with* ECF No. 34 at PageID 412.) But in Sedgwick's view, even if "full reward" includes retroactive reimbursement, Quit for Life still qualifies as a reasonable alternative standard. (ECF No. 34 at PageID 412–13.) Sedgwick specifies that retroactive reimbursement is available to every participant. (*Id.*) Participants just need to complete the program by June 30th. (*Id.*)

Sedgwick adds that the program need only "give individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year." 29 C.F.R. § 2590.702(f)(4)(iv)(i); 42 U.S.C. § 300gg-4(j)(3)(C) ("The plan shall give individuals eligible for the program the opportunity to qualify for the reward under the program at least once each year."). And Sedgwick relies on DOL guidance which provides:

> If a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoiding the tobacco premium surcharge) under the program, the plan is not required (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan

19

year.  Nothing, however, prevents a plan or issuer from allowing rewards (including pro-rated rewards) for mid-year enrollment in a wellness program for that plan year.

U.S. Dep't of Lab., *FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation*, at 6 (Jan. 9, 2014),

https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-18.pdf.  With this, Sedgwick argues that it needed to make the "full reward" available only once per year, and that Quit for Life more than meets this bare requirement by offering participants retroactive reimbursement if they complete the program by June 30th.  (ECF No. 18-1 at PageID 68–72.)  Sedgwick also argues that the DOL guidance supports pro rata rewards.  (*Id.* at PageID 71.)

Plaintiff counters that Sedwick does not offer the full reward to everyone here because the reward is unavailable to those who complete Quit for Life after June 30th.   (ECF No. 1 at PageID 7.)  Plaintiff also argues that the DOL frequently asked question guidance addresses enrollment opportunities—not retroactive reimbursement.  (ECF No. 33 at PageID 396–97.)  And Plaintiff relies on the Secretary of Labor's position in *Sec'y of Labor v. Macy's, Inc.* to argue that Sedgwick cannot deny retroactive reimbursement to Plan participants who complete Quit for Life later in the year.  (*Id.* at PageID 395–96.)  Plaintiff argues that this case and *Macy's* involve "virtually identical claims."  (*Id.* at PageID 395.)

The Court now takes up these arguments.[8]  Both the statute and regulation make clear that the "full reward" must be "available" to all similarly situated individuals.  *See* 29 C.F.R. § 2590.702(f)(4)(iv); 42 U.S.C. § 300gg-4(j)(3)(D).  And accepting that full reward includes

---

[8]For this Motion to Dismiss, any arguments about whether the regulation is valid under *Loper Bright* is not relevant to whether Quit for Life is a reasonable alternative standard.  Indeed, under either the regulation or the PHSA, the Court finds that Quit for Life is a reasonable alternative standard.

retroactive reimbursement, the Court agrees with Sedgwick that the full reward here is available to all similarly situated individuals. Indeed, tobacco users can be put in the same position as non-tobacco users so long as they complete Quit for Life by June 30th. So Sedwick offers the full reward to everyone. If a Plan participant finishes Quit for Life after June 30th, they will not receive the full reward. But this does not mean that the full reward was unavailable to them. Rather, the participant just failed to take the necessary steps (i.e., finish Quit for Life by June 30th) to receive the full reward.

Further, to read the regulations and the statute to require full retroactive refund to all participants who complete the Quit for Life program at any point in the year would make the requirement that "[t]he plan shall give individuals eligible for the program the opportunity to qualify for the reward under the program at least once each year" superfluous. 29 C.F.R. § 2590.702(f)(4)(iv)(i); 42 U.S.C. § 300gg-4(j)(3)(C); *See Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *16–19 (D. Minn. July 29, 2025). This provision creates a "bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." 78 Fed. Reg. 33158, 33162. Under Plaintiff's approach, a plan offering participants an opportunity to qualify for the full reward only once per year—the minimum requirement in the statute and regulation—would violate the "full reward" requirement.

Plaintiff would read the "frequency of opportunity" requirement out of the statute and regulations. But courts should construe a statutory and regulatory scheme "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Sedgwick therefore suggests the better reading, one which harmonizes both provisions.

So long as the Plan participants have at least one opportunity annually to enroll and complete Quit for Life and receive the full reward, the Plan complies with both the "full reward" and "frequency of opportunity" requirements.  The Plan here does just that.

What is more, Plaintiff's argument that the DOL's frequently-asked-question guidance deals exclusively with enrollment opportunities is unconvincing.  The language of that guidance specifically says that "[i]f a participant is provided a reasonable opportunity to enroll … and *qualify* for the reward … under the program, the plan is not required (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge …."  U.S. Dep't of Lab., *FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation*, at 6 (Jan. 9, 2014) (emphasis added), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-18.pdf.  The document references not only opportunities to enroll but also opportunities to qualify for the reward.  The guidance therefore should also be read to harmonize with the "frequency of opportunity" requirement: The Plan needs only to offer at least one reasonable opportunity a year to finish Quit for Life and entitle smokers the same full reward as non-smokers.  And as set out at oral argument, neither party disputes that Plan participants had a reasonable opportunity to enroll in Quit for Life.

Plaintiff's reliance on the Secretary of Labor's position in *Sec'y of Lab. v. Macy's, Inc.* is similarly unavailing.  *See Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *19 (D. Minn. July 29, 2025).  In *Macy's*, the Secretary of Labor challenged Macy's tobacco cessation program for an alleged failure to comply with the "full reward" requirement.  No. 1:17-cv-541, 2021 WL 5359769, at *15 (S.D. Ohio Nov. 17, 2021).  Under Macy's program, no retroactive reimbursement of the surcharge was provided at all.  *Id.*

The facts here are different because Sedgwick provides retroactive reimbursement for the participants who complete the program before June 30.  And to interpret the Secretary of Labor's position as Plaintiff does would once again render the "frequency of opportunity" language superfluous.

As a final note, Plaintiff points to the preamble of the regulation to argue that Sedgwick must retroactively reimburse tobacco users who complete Quit for Life after June 30th.  (*See* ECF No. 33 at PageID 387.)  But the Court does not find that the preamble is on point here.  It says:

> Accordingly, while an individual may take *some time* to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year.  (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)

78 Fed. Reg. 33158, at 33163.  Nothing in the above text from the preamble requires that a participant be given over half a year to satisfy a reasonable alternative standard.  Rather it says, "while an individual may take *some* time."  Having over half a year to complete a program is more than "some time."  Indeed, the example in the preamble uses April 1, showing perhaps that "some time" means three months, not six or more.

The preamble also provides:

> In some circumstances, an individual may not satisfy the reasonable alternative standard until the end of the year.  In such circumstances, the plan or issuer may provide a retroactive payment of the reward for that year within a reasonable time after the end of the year, but may not provide pro rata payments over the following year (a year after the year to which the reward corresponds).

78 Fed. Reg. 33158, at 33163.  But again, nothing here *requires* that Sedgwick allow a Plan participant the entire year to satisfy the reasonable alternative standard.  Rather the Court finds

23

that this part of the preamble speaks to what should happen with the reward if an employer gives

a participant a full year to complete a reasonable alternative standard.  In sum, the Court finds

that the guidance does not speak to the situation presently before the Court.  *See also Buescher v.*

*N. Am. Lighting, Inc.*, No. 24-CV-2076, 2025 WL 1927503, at \*25 n.24 (C.D. Ill. June 30, 2025)

(stating in dicta that "it is fair to question whether [the] preamble language implies a strict

retroactivity rule—i.e., even an individual who does not pursue the reasonable alternative

standard until November of a given year is entitled to 10 months of surcharge refunds—as

opposed to a rule of reasonableness").

## IV.    Failure to Notify

### A.    Reasonable Alternative Standard

Plaintiff's next claim is that the Plan materials do not notify participants of a reasonable

alternative standard.  (ECF. No. 1 at PageID 9–11.)  This claim turns on Plaintiff's argument that

Quit for Life is not a reasonable alternative standard so any notice about that Plan is inadequate.

(*See* ECF No. 1 at PageID 16 "[N]either the Plan document nor the [Summary Plan Description]

for the Plan during the applicable limitations period detailed a smoking cessation program such

that a participant could avoid paying the tobacco surcharge for the entire plan year").)  Because

the Court finds that Quit for Life is a satisfactory reasonable alternative standard, Plaintiff's

claim that Sedgwick failed to notify Plan participants of a reasonable alternative standard fails.

### B.    Physician Recommendation

Plaintiff alleges that Plan participants must "be notified that recommendations of the

person's physician will be accommodated, which Plan materials fail to do."  (ECF No. 1 at

PageID 2.)  In its Motion to Dismiss, Sedgwick did not address this allegation.[9]  In response to the Motion to Dismiss, Plaintiff brings up the alleged failure to notify Plan participants that a physician's recommendation will be accommodated.  (ECF No. 33 at PageID 399.)  And Plaintiff points out that Sedgwick's Motion to Dismiss does not address that allegation and writes "Defendant's failure to address this notice requirement constitutes a concession of its noncompliance."  (*Id.*)  Then, in its Reply, Sedgwick argues that the regulation and the PHSA conflict such that Sedgwick need not comply with this notice requirement.  Sedgwick took this same position at the oral argument.

For the reasons explained in Section II of this Part, the Court considers the regulation here to be valid at this stage of the litigation.  *See* 29 C.F.R. § 2590.702(f)(4).  And the regulation provides "[t]he plan or issuer must disclose in all plan materials… *a statement that recommendations of an individual's personal physician will be accommodated*."  *See* 29 C.F.R. § 2590.702(f)(4)(v).

Plaintiff alleges that Plan materials failed to notify participants that Sedwick will accommodate recommendations of the person's physician.  And upon review of the relevant portion of the Summary Plan Description included with Sedgwick's Motion to Dismiss, the Court has seen no language suggesting that Sedwick will accommodate a physician's recommendation.  (*See* ECF No. 18-3 at PageID 94–95.)  So Plaintiff has plausibly alleged that Sedgwick's wellness program fails to satisfy a regulatory requirement, meaning that Plaintiff has plausibly alleged a violation of ERISA's rules.  29 C.F.R. § 2590.702(f)(4) ("A health-contingent

---

[9] Although Plaintiff reincorporated all allegations (including this one) by reference into each of the Counts, she did not otherwise add this allegation in the Causes of Action.  (ECF No. 1 at PageID 14–18.)  While the Court finds that there is sufficient notice that Plaintiff was suing Sedgwick over this alleged failure, Plaintiff's Complaint could have been clearer on this point.

wellness program that is an outcome-based wellness program, as described in paragraph (f)(1)(v) of this section, does not violate the provisions of this section only if all of the following requirements are satisfied.").

## V.    Breach of Fiduciary Duties

Because of the complexity of the law and Plaintiff's breach of fiduciary duties claims, the Court will begin by laying out Plaintiff's allegations and explaining the law of fiduciary duties under ERISA.  Next, the Court will lay out the parties' arguments.  The Court will follow with analysis of whether Plaintiff has plausibly alleged that Sedgwick is a fiduciary, whether Plaintiff has properly alleged harm to the Plan, whether Plaintiff has plausibly pled their § 1106 claims, and finally, whether Plaintiff has plausibly pled that Sedgwick has breached any fiduciary duties.

### A.    Fiduciary Duties under ERISA

Plaintiff alleges that Sedgwick was the Plan administrator and a fiduciary throughout the relevant limitations period.  In short Plaintiff asserts that Sedgwick "exercised discretionary authority" and control over the management and disposition of Plan assets "by holding the funds collected from the tobacco surcharge in its own accounts", and the responsibility to administer the Plan.  (ECF No. 1 at PageID 17 (*citing* 29 U.S.C. §§ 1002(16) and 1002(21)).)[10]  Allegedly, Sedgwick breached its fiduciary duties in plan administration by assessing and collecting the allegedly unlawful tobacco surcharge and increased life insurance premiums and therefore administering the Plan in violation of ERISA's antidiscrimination requirements.  (*Id.;) see* 29 U.S.C. § 1104(a)(1)(D).  And this allegedly caused Plaintiff and members of the class she seeks

---

[10] ERISA provides that "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]"  29 U.S.C. § 1002(21)(A)(i).

to represent to pay the unlawful surcharge, violating the fiduciary duty of loyalty imposed by ERISA. (*Id.*;) *see* 29 U.S.C. § 1104(a)(1)(A).

Plaintiff asserts that, after collecting the unlawful surcharges, Sedgwick violated a fiduciary duty by commingling the added money it received from the surcharges with its own assets for its own benefit.  (*Id.* at PageID 18 (citing 29 U.S.C. 1106(b)(1)).)  Plaintiff also alleges that through this conduct, Sedgwick failed to act solely in the interest of the Plan participants and their beneficiaries and, instead, acted on behalf of itself, a party whose interests were adverse to the interest of the Plan and its participants and their beneficiaries.  (*Id.* (citing 29 U.S.C. §§ 1104(a)(1)(A); 1106(b)(2)).)  What is more, Plaintiff claims that Sedgwick failed to act prudently and diligently in reviewing the terms of the Plan and its related materials as well as any notices regarding the availability of reasonable alternative standards.  (*Id.* at PageID 17–18;) *see* 29 U.S.C. 1104(a)(1)(B).[11]  Finally, Plaintiff alleges that Sedgwick breached its fiduciary duties by "exercising discretion over whether to issue retroactive reimbursements to participants who complete the Quit for Life program after June 30," "controlling refund administration," "setting annual compliance conditions," and withholding information about the tobacco surcharge.  (ECF No. 34 at PageID 418;) *see* 29 U.S.C. § 1104(a)(1)(A), (B), (D).

Turning now to the statutory language, both 29 U.S.C. §§ 1104 and 1106 impose fiduciary duties on those acting in a fiduciary capacity (as defined in the statute) over the plan. *See* 29 U.S.C. §§ 1104, 1106.  For example, § 1104(a)(1)(A) imposes a duty of loyalty on fiduciaries, requiring them to act for the exclusive purpose of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan."  29

---

[11] To the extent that Plaintiff rests her fiduciary duty claims on Sedgwick's conduct in creating and implementing the Plan's life insurance programs, the standing analysis above precludes Plaintiff's claims.

U.S.C. § 1104(a)(1)(A).  And § 1104(a)(1)(B) imposes a duty of prudence, requiring fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  Finally, Section 1104(a)(1)(D) imposes a duty that fiduciaries act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."  29 U.S.C. § 1104(a)(1)(D).

Section 1106 prohibits fiduciaries from self-dealing and engaging transactions that create conflicts of interest.  29 U.S.C. § 1106.  Indeed, Section 1106(b)(1) prevents fiduciaries from dealing "with assets of the plan in [their] own interest or for [their] own account."  29 U.S.C. § 1106(b)(1).  And Section 1106(b)(2) prohibits fiduciaries from engaging in any transaction in any capacity on behalf of a party or representing a party whose interests are adverse to those of the plan or its participants or beneficiaries.  29 U.S.C. § 1106(b)(2).

When an individual breaches the fiduciary duties set forth in §§ 1104 and 1106, § 1109 renders that individual personally liable for any losses the plan incurred, any ill-gotten profits, and any other equitable relief the court deems appropriate.  29 U.S.C. § 1109; *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996).  And Section 1132(a)(2) authorizes suits brought on behalf of the plan. *Hawkins v. Cintas Corp.*, 32 F.4th 625, 630 (6th Cir. 2022) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).  Suits brought on behalf of a plan for violating fiduciary duties must allege that the plan itself was harmed.  *See id.* at 631 ("[A]ny claims properly brought under § 502(a)(2) must be for injuries to the plan itself."); *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 139–40 (1985) (finding that § 1109 authorizes recovery for harms to a plan which restores to the plan any losses incurred).

To bring a claim for breach of fiduciary duty under ERISA, the plaintiff must show: (1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach harmed the plaintiff. *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 464 (6th Cir. 2022) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449, 454 (6th Cir. 2002)).

As a result of these alleged breaches, Plaintiff asserts that she and the class she seeks to represent incurred the unlawful surcharges and paid millions through deductions to their paychecks. (*Id.* at PageID 18.) Plaintiff seeks remedies under § 1109, including a declaration that the surcharge is unlawful; restoration of losses to the Plan and its participants; disgorgement of any benefits or profits Sedgwick received from using Plan assets; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries; and all appropriate injunctive relief. (*Id.* at PageID 20.)

Sedgwick counters Plaintiff's allegations on many fronts. (*See* ECF No. 18-1 at PageID 72–78.) First, Sedgwick asserts that Plaintiff is claiming a violation of a fiduciary obligation that does not exist in the statute. Under 29 U.S.C. § 1104(a)(1)(D), fiduciaries must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." (*Id.* at PageID 73.) Sedgwick reasons that the plain language of the provision defeats any claim that it had an affirmative obligation to uncover any terms of the Plan that allegedly violate ERISA and then disregard those terms. Indeed, Sedwick notes that district courts around the country have held that it is not a breach of a fiduciary duty simply to administer a plan that allegedly violates ERISA. (*Id.* at PageID 73–75.)

Secondly, Sedgwick insists that it does not act in a fiduciary capacity with respect to the tobacco wellness program. (*Id.* at PageID 75.) While, conceding that it serves as the plan

sponsor for the Plan, Sedwick asserts that it may act as a fiduciary sometimes and as an

employer/settlor in others. (*Id.* at PageID 75–76.)  For example, it argues that functions related

to plan design, such as adopting, modifying, or terminating the terms of an ERISA plan are

settlor functions, not fiduciary ones. (*Id.* at PageID 76.)  Pointing to *Macy's*, Sedgwick asserts

that its creation and implementation of the tobacco wellness program were both non-fiduciary

functions, negating Plaintiff's claims. (*Id.* at PageID 76.)

Third, Sedgwick alleges that Plaintiff did not allege harm to the Plan as required to bring

a claim of breach of fiduciary duty as a representative of the Plan under 29 U.S.C. § 1132(a)(2).

(*Id.* at PageID 76.)  Sedgwick insists that to bring a claim on behalf of the Plan, Plaintiff must

allege that the Plan suffered losses related to Sedgwick's conduct and then seek remedies that

provide a benefit to the Plan. (*Id.* at PageID 76–77.)

Finally, Sedgwick asserts that Plaintiff has not alleged a prohibited transaction sufficient

to state a claim under 29 U.S.C. § 1106(b)(1). (*Id.* at PageID 77.)  Sedgwick denies that it has

used the surcharge funds to enrich itself, that it is a fiduciary with respect to the tobacco wellness

plan. (*Id.* at PageID 78.)  And it asserts that Plaintiff has not alleged facts showing that

Sedgwick engaged in a "transaction" between itself and the Plan in its administration of the

tobacco wellness program nor that it collected the surcharge for its own interest or for its own

account. (*Id*.)

Sedgwick adds, in its Reply, that collecting employee's contributions via the tobacco

surcharge is a ministerial, nonfiduciary function under 29 C.F.R. § 2509.75-8. (ECF No. 34 at

PageID 417–18.)  And it argues that, in effect, Plaintiff amended her complaint by adding new

claims in her Response, such that the Court should disregard it. (*Id*.)

In her Response to the Motion to Dismiss here, Plaintiff argues that she properly pleaded the fiduciary duty claims. (ECF No. 33 at PageID 399.) She asserts that § 1104(a)(1)(D) requires Sedgwick to ensure that the tobacco wellness program complies with ERISA, highlighting the language of the provision that states that fiduciaries must administer a plan in accordance with the plan documents only when the documents comply with ERISA. (*Id.* at PageID 400.) And so Sedgwick allegedly cannot blindly follow its Plan documents which violate ERISA.

Accepting that plan design is a "non-fiduciary, settlor function," Plaintiff still insists that plan administration is an inherently fiduciary function. (*Id.* at PageID 400.) Plaintiff continues that fiduciary duties attach to plan administration when "a party exercises discretionary authority or control over plan management or administration." (*Id.* at PageID 401.) Plaintiff argues therefore that Sedgwick acted as a fiduciary when it determined how and when participants could receive retroactive reimbursements, when it decided what information to disclose about the surcharge, and when it allegedly mismanaged and improperly retained the surcharge money that it received. (*Id.* at PageID 401.)

Next, Plaintiff asserts that it properly alleged harm to the Plan in its complaint when it stated:

> Defendant retained the amounts of the surcharges thereby increasing its own monies. By mingling the additional money received from the surcharges with its own assets, Sedgwick dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). As a result of the imposition of the unlawful and discriminatory tobacco surcharge, Sedgwick enriched itself at the expense of the Plan, resulting in it receiving a windfall.

(ECF No. 1 at PageID 18.) Plaintiff notes that, when construed liberally, this allegation asserts that Sedgwick kept the surcharge money for itself which enabled it to contribute less to the Plan, thus harming the Plan as a whole. (ECF No. 33 at PageID 402.) She insists that this allegation is

enough to state a representative claim of harm to the Plan as required by 29 U.S.C. § 1132(a)(2).
(*See Id.*)

Finally, Plaintiff argues that she has properly alleged a prohibited transaction claim under
29 U.S.C. § 1106(b)(1).  (*Id.*)  She asserts that to violate § 1106(b)(1) a fiduciary simply must
"deal with the assets of the plan in his own interest or for his own account."  She adds that,
whether or not the surcharge is unlawful, the funds received from the surcharge are Plan assets
under 29 C.F.R. § 2510.3-102(a)(1).  (*Id.* at PageID 403.)  As a result, Plaintiff's argues that
alleging that Sedgwick retained the surcharge funds at the expense of the Plan plausibly alleges
self-dealing under § 1106(b)(1).  (*Id.*)  She repeats that ERISA broadly defines fiduciaries to
include those who exercise "any authority or control respecting management or disposition of
[plan] assets."  (*Id.* (citing 29 U.S.C. § 1002(21)(A).)  Sedgwick's management of the surcharge
funds and determination of how refunds would be issued, she contends, constitute the exercise of
authority and control over plan assets and therefore trigger fiduciary duties.  (*Id.*)  And she
argues that Sedgwick's management of the surcharge funds in its own interest constitute a
transaction under § 1106(b)(1).  (*Id.*)

B.      **Whether Plaintiff's Response Amended Her Complaint**

With the relevant law and the parties' arguments laid out, the Court will next address
Sedgwick's position that Plaintiff improperly raised new allegations in its Response to the
Motion to Dismiss and that the Court should not consider them.  (ECF No. 34 at PageID 418.)  In
her Response, Plaintiff specified that Sedgwick breached its fiduciary duties by "exercising
discretion over whether to issue retroactive reimbursements to participants who complete the
Quit for Life program after June 30," "controlling refund administration," "setting annual

compliance conditions," and deciding what information to disclose regarding the tobacco surcharge.  (*Id*.)

When reviewing a motion to dismiss, the general rule is that a court limits itself to the face of the complaint.  *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022).  And although sometimes courts will consider some material outside the complaint, a response to a Motion to Dismiss cannot act as an amendment to the complaint.  *See Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) ("If plaintiffs believe they need to supplement their complaint with additional facts to withstand [a motion to dismiss] ... they have a readily available tool: a motion to amend the complaint under Rule 15.  *Id*.  They cannot amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.") (internal quotations omitted) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)).  In fact, Federal Rule of Civil Procedure 12 states that when a court considers matters outside the pleadings on a 12(b)(6) Motion to Dismiss it must convert the Motion to Dismiss into a Motion for Summary Judgment and give the parties reasonable opportunity to present all material pertinent to the motion.  Fed. R. Civ. P 12(d).  At the same time however, the Court must draw all reasonable inferences from the complaint in favor of the plaintiff.  *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).  As a result, when it is reasonable for the Court to infer that the factual assertion in Plaintiff's Response is also alleged in the Complaint, the Court will draw that inference.  But where the Response materially amends the allegations in the Complaint, the Court will limit its review to the Complaint.

Looking now at Plaintiff's Response, when she claims that Sedgwick breached its fiduciary duties by "exercising discretion over whether to issue retroactive reimbursements to

participants who completed the Quit for Life program after June 30, controlling refund
administration, and setting annual compliance conditions," Plaintiff cites paragraphs 64–67 of
the Complaint.  (ECF No. 33 at PageID 389.)  In paragraph 64 of the Complaint, Plaintiff alleges
that Sedgwick "exercised discretionary authority and discretionary control respecting
management of the Plan and the disposition of its assets by holding the funds collected from the
tobacco surcharge in its own accounts, and had discretionary authority and discretionary
responsibility in the administration of the Plan." (ECF No. 1 at PageID 17.)  The Court finds that
these allegations in the Response explain the conduct already alleged in paragraph 64 in the
Complaint rather than amending the Complaint itself.

In her Response, Plaintiff also asserts a breach of fiduciary duty when Sedgwick decided
what information to disclose about the tobacco surcharge, citing paragraphs 4 and 64–67 in the
Complaint as the source for that claim.  (ECF No. 33 at PageID).  In paragraph 4 of the
Complaint, Plaintiff asserts:

> Furthermore, even if such an alternative standard existed, Defendant has neglected
> to adequately inform employees of its availability, an alternative that would allow
> employees to circumvent the surcharge for the entirety of the year. Further,
> participants must also be notified that recommendations of the person's physician
> will be accommodated, which Plan materials fail to do. This failure to communicate
> is common across all Plan communications.

(ECF No. 1 at PageID 2.).  In paragraph 67 of the Complaint, Plaintiff alleges that Sedgwick
breached its fiduciary duties when it failed to prudently and diligently "review the terms of the
Plan and related plan materials, including the Plan's wellness program and its compliance with
the regulatory framework, as well as any notices regarding the availability of compliant
reasonable alternative standards (or lack thereof)."  The Court finds that Plaintiff's allegations in
the Complaint when read together cover her allegations in the Response.  While Plaintiff's
allegation that Sedgwick failed to review the Plan materials is not enough to cover Sedgwick's

34

active decision on what information to provide Plan participants, paragraph 4 of the Complaint

asserts that Sedgwick actively chose not to communicate the vital portions of the tobacco

wellness program to the Plan participants.  In the end, the Court finds that the Response is not an

amendment to the Complaint because one can infer the conduct Plaintiff alleges in the Response

from the language of the Complaint.

### C.    Sedgwick's Fiduciary Status

The Court will now address whether Sedgwick is a fiduciary for specific conduct related

to the tobacco wellness program.  "In every case charging breach of ERISA fiduciary duty, then,

the threshold question is … whether that person was acting as a fiduciary … when taking the

action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  As noted above,

29 U.S.C. § 1002(21)(A) defines a fiduciary of a plan under ERISA, in part, as any person whom

"exercises any discretionary authority or discretionary control respecting management of such

plan or exercises any authority or control respecting management or disposition of its assets."  29

U.S.C. § 1002(21)(A).  "The term *person* is defined broadly to include a corporation …."  *Hi-*

*Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 744 (6th Cir. 2014)

(emphasis omitted) (citing 29 U.S.C. §§ 1002(21)(A), 1002(9)).

But the Sixth Circuit has held that fiduciary duties are imposed on entities or companies

that exercise any authority or control over plan assets.  *Id.*  A plan administrator therefore is only

a fiduciary when they act in such a capacity in relation to the plan.  *Pegram* 530 U.S. at 225–26.

An employer is a "plan sponsor" when it establishes an employee benefit plan.  29 U.S.C. §

1002(16)(B).  Sedgwick is both the plan sponsor and plan administrator for the Plan here.  (*See*

ECF No. 18-1 at PageID 76; ECF No. 18-3 at PageID 310.)  ERISA permits an entity to wear

two hats: "one as a fiduciary in administering or managing the plan for the benefit of participants

35

and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." *Adams v. Lockheed Marting Energy Sys.* 199 Fed.Appx. 405, 407 (6th Cir. 2006) (citing *Hunter v. Caliber Sys.*, 220 F.3d 702, 718 (6th Cir. 2000); *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996)).  An employer's decisions about the content of a plan are not fiduciary acts themselves.  *Pegram* 530 U.S. at 226 (Citing *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("[P]lan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").  Additionally, certain administrative acts lack the discretion necessary to impose fiduciary duties on the actor.  *See* 29 C.F.R. § 2509.75–8 (listing acts, including "preparation of employee communications material" and "collection of contributions and application of contributions as provided in the plan").

Plaintiff pleads enough facts about Sedwick's discretionary acts to plausibly state a claim that Sedgwick is a fiduciary for the tobacco wellness program in several ways.  Setting up the terms of the program, including the June 30 deadline for retroactive reimbursement; implementing the program on those terms; and preparing the communication materials are not acts that generate fiduciary duties.  *See Pegram* 530 U.S. at 226 (Citing *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)); *Curtiss–Wright Corp.*, 514 U.S. 73, 78 (1995); 29 C.F.R. § 2509.75–8; *Sec'y of Labor v. Macy's*, No. 1:17-cv-541, 2021 WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021).[12]

---

[12] To be clear, the Court finds that Plaintiff's allegation in the Complaint that Sedgwick violated fiduciary duties when it "administered a Plan that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D)" does not plausibly state a claim for breach of fiduciary duty.  As noted above, such a claim must refer to some specific discretionary, administrative or managerial conduct that imposes fiduciary obligations on a plan administrator.

First, Plaintiff alleges that Sedgwick was a fiduciary when it assessed and collected the allegedly unlawful tobacco surcharge.  This claim runs counter to 29 C.F.R. § 2509.75–8, which lists the collection of contributions and application of contributions as provided in the plan as non-fiduciary acts.  That said, the Sixth Circuit in *Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan* found that, because "an entity that exercises any authority or control over disposition of a plan's assets becomes a fiduciary," an insurance company that chose to allocate a fee among its customers acted as a fiduciary in the context of the collection of the discretionary fees.  *See* 722 F.3d 861, 865–67 (6th Cir. 2013) (citing *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs., Inc.*, 689 F.3d 793, 798 (6th Cir. 2012)).  Even though, this interpretation seems to conflict with 29 C.F.R. § 2509.75–8 and the decision in *Macy's*, the Court is bound to apply Sixth Circuit precedent.  So for this Motion, the Court finds Sedgwick to be acting in a fiduciary capacity with the assessment and collection of the tobacco surcharge.  *See Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2022 WL 407238 (S.D. Ohio Feb. 10, 2022).

Plaintiff asserts not only that Sedgwick has assessed and collected the surcharge, but that it then used the money to enrich itself at the expense of the Plan by commingling the funds with its other assets.  (ECF No. 1 at PageID 18.)  Like the court in *Bokma*, the Court finds this alleged conduct to qualify as an act of discretionary administration of the Plan which is enough to impose fiduciary duties on Sedgwick.  *Bokma v. Performance Food Group*, 783 F.Supp.3d 882, 900 (E.D. Va. May 20, 2025).  Plaintiff alleges that Sedgwick exercised discretion over the "management or disposition of [Plan] assets" by choosing to commingle those assets for its own benefit.  *Id.*  This allegation differentiates Sedgwick's conduct from the ministerial conduct listed at 29 C.F.R. § 2509.75–8 and goes beyond the mere creation and implementation of a plan that the *Macy's* court found to be insufficient.  *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2021

37

WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021) (the mere creation of a tobacco wellness program and its implementation in accordance with the plan documents, even those allegedly in violation of ERISA, were not fiduciary functions absent allegations of mismanagement or misappropriation of plan assets).  Plaintiff's allegations here include those assertions that the court found missing in *Macy's*.

Plaintiff also alleges that Sedgwick is a fiduciary because of its failure to review the Plan materials and communications.  Plaintiff relies on *Tibble v. Edison Int'l* for the idea that "fiduciaries have a continuing duty to monitor and ensure compliance with evolving legal standards under ERISA."  (ECF No. 33 at PageID 401 (internal quotations omitted).)  In *Tibble*, employees had challenged their employer's decisions to offer them higher-priced mutual fund options under its retirement plan when lower-priced options were available.  *Tibble v. Edison Int'l*, 575 U.S. 523, 528–30 (2015).  And although the ultimate issue in the case was whether the claim for breach of fiduciary duty was timely, the *Tibble* court found that the requirement that a fiduciary under ERISA "discharge his responsibility with the care, skill, prudence, and diligence that prudent person acting in a like capacity and familiar with such matters would use" required the employer to continually "monitor investments and remove imprudent ones."  *Id.*  While the *Tibble* court announced this principle in the context of investing and it drew the principle from a similar one in trust law, this Court finds the same principle applies here.  The Court finds that the duty of prudence imposed by ERISA requires fiduciaries to monitor their programs for compliance with ERISA itself.  So the allegation that Sedgwick chose not to monitor its Plan materials and communications to ensure that it was communicating all the required information to Plan participants sufficiently alleges a fiduciary act.

Finally, Plaintiff alleged that Sedgwick engaged in a fiduciary act when it chose what information to provide Plan participants in its Plan materials and communications. The Fourth Circuit has held that "a plan administrator acts in a fiduciary capacity when it conveys (or fails to convey) material information to a plan participant concerning the retention of eligibility for a benefit." *Dawson-Murdock v. Nat'l Counseling Grp.*, *Inc.*, 931 F.3d 269, 279 (4th Cir. 2019)). And a Virginia district court applied that language to find almost identical allegations to Plaintiff's here enough to generate a fiduciary duty in an employer. *See Bokma v. Performance Food Group*, 783 F.Supp.3d 882, 900 (E.D. Va. May 20, 2025) (citing *Dawson-Murdock v. Nat'l Counseling Grp.*, *Inc.*, 931 F.3d 269, 279 (4th Cir. 2019)). The Sixth Circuit, on the other hand, has found a failure to communicate material information to plan participants and their beneficiaries to generate a fiduciary duty in three instances:

> (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider on its own initiative provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

*Haviland v. Metropolitan Life Ins. Co.*, 730 F.3d 563, 572 (6th Cir. 2013) (emphasis omitted) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 453 (6th Cir. 2002). Whether a plan administrator's failure to provide plan participants with information about the availability of accommodations for physician recommendations as required by 29 C.F.R. § 2590.702(f)(4)(v) would amount to providing misleading or inaccurate information about the future of the plan is unclear. It also unclear whether the above list is intended to be exhaustive or illustrative.

In fact, the Sixth Circuit has recently clarified that the scenarios in *Haviland* reflect scenarios "in which a fiduciary has a duty to disclose even when not expressly required under ERISA's disclosure provisions." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 465 (6th Cir.

2022).  The *Chelf* ruling suggests that fiduciaries may have a fiduciary obligation to disclose the information that is required by ERISA and its regulations.  *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 465 (6th Cir. 2022).  Given Sedgwick's discretion in deciding what information to include in the Plan materials and to communicate to Plan participants, for the purposes of this Motion, Plaintiff has plausibly stated a claim that Sedgwick acted as a fiduciary when communicating with Plan participants about the tobacco wellness program.

As for the above instances of conduct related to the tobacco wellness program, the Court finds that Plaintiff has plausibly pleaded that Sedgwick is a fiduciary within the definition of 29 U.S.C. § 1002(21).

### D.    Harm to the Plan

Next Sedgwick has argued that Plaintiff has not sufficiently alleged a harm to the Plan, a requirement for Plaintiff to bring a claim as a representative on behalf of the Plan under 29 U.S.C. § 1132(a)(2).  But Plaintiff insists that her allegation that Sedgwick commingled the funds from the tobacco surcharge and enriched itself at the expense of the Plan sufficiently alleges harm to the Plan.  *See Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 139–40 (1985) (finding that § 1109 authorizes recovery for harms to a plan which restores to the plan any losses incurred); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 631 (6th Cir. 2022) ("[A]ny claims properly brought under § 502(a)(2) must be for injuries to the plan itself.").  The Court finds that Plaintiff has alleged harm to the Plan and sought remedies that would rectify that harm.  These allegations state that Sedgwick withheld funds from the Plan and thus harmed it.  As for the remedy, Plaintiff, among other requests, seeks

> [r]elief to the Plan from Defendant for its violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharge is unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and

40

profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

(*Id.* at PageID 19–20.)  Plaintiff has therefore sufficiently pleaded a harm to the Plan and seeks remedies that would benefit the Plan and restore any losses to it.  *See Duke v. Luxottica U.S. Holdings Corp.*, No. 2:21-cv-6072, 2024 WL 4904509, at *6–7 (E.D.N.Y. Nov. 27, 2024).

### E.    Prohibited Transaction under § 1106(b)(1)

Sedgwick asserts that, because Plaintiff has not alleged a prohibited transaction, she has not alleged a valid claim under 29 U.S.C. § 1106(b)(1).  As laid out above, § 1106(b)(1), labeled "Transactions between a plan and fiduciary," prohibits a fiduciary from dealing "with assets of the plan in his own interest or for his own account."  The Court agrees with Plaintiff that the tobacco surcharge funds constitute Plan assets under 29 C.F.R. § 2510.3-102(a)(1) because they are "amounts that a participant has withheld from his wages by an employer[] for contribution …to the plan …."  The Court also found above that Sedgwick is a fiduciary for the allegations that it exercised discretion over the tobacco surcharge funds and retained them for its own benefit at the expense of the Plan.  Thus, the ultimate question is whether Plaintiff has alleged that Sedgwick has used the tobacco surcharges for its own interest or in its own account.

The Court agrees with Sedgwick that § 1106(b)(1) constitutes an "absolute bar against self dealing."  *Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988).  But Sedgwick then asserts that this absolute bar hinges on a transaction between the fiduciary and the plan, even when the plain language of the statute prohibits a fiduciary from dealing "with assets of the plan in his own interest or for his own account" full stop.  *See* 29 U.S.C. § 1106(b)(1).  The broader

reading of § 1106(b)(1) to prohibit all self dealing with plan assets aligns with the rest of the provision.

Section 1106(a)(1) explicitly prohibits fiduciaries from causing a plan to "engage in a transaction" that results in listed scenarios that constitute conflicts of interest. 29 U.S.C. § 1106(a)(1). Additionally, §§ 1106(b)(2) and 1106(b)(3) both explicitly prohibit fiduciaries from engaging in transactions involving the plan in some cases. 29 U.S.C. § 1106(b)(2), (3). Thus, one should read § 1106(b)(1)'s silence about transactions considering the whole provision and Sixth Circuit case law. With that in mind, the Court finds that § 1106(b)(1) is a prohibition against a fiduciary from using plan assets to self deal broadly, despite the title of the subsection. *See Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 750 (6th Cir. 2014).[13]

Finally, Sedgwick's argument that Plaintiff has not alleged that it has collected the tobacco surcharge for its own interest or for its own account is unpersuasive. As noted above, Plaintiff alleged that Sedgwick retained the tobacco surcharge funds in order to enrich itself at the expense of the Plan. Taking the factual allegations to be true and making reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff alleged that Sedgwick has used Plan

---

[13] While § 1106(b)(1) is an "absolute bar against self dealing," the language of § 1106(b)(2) anticipates the fiduciary acting on behalf of or representing a party adverse to the interests of the plan or its participants or their beneficiaries in a transaction involving the plan. The language of the statute uses both the term "fiduciary" and the term "party," suggesting that they are separate entities, and reading § 1106(b)(2) to prohibit a fiduciary from representing their own interests adverse to the plan or its participants or beneficiaries would render § 1106(b)(1) superfluous. And so the Court reads § 1106(b)(2) to prohibit the fiduciary from acting on behalf of or representing a third party whose interests are adverse to the plan, its participants or beneficiaries in any transaction involving the plan. Plaintiff has not alleged that Sedgwick has engaged in any transaction on behalf of a third party, so their fiduciary duty claim alleging a violation of § 1106(b)(2) fails.

assets for its own interest at the expense of the Plan.  As a result, the Court finds that Plaintiff

plausibly asserted a claim under 29 U.S.C. § 1106(b)(1).

###    F.    Breach of Fiduciary Duties

Sedgwick argues that it has no fiduciary duty to disregard the terms of the Plan when they

are alleged to be in violation of ERISA, citing a handful of mostly district court cases from other

circuits to support its position.  Plaintiff counters that Sedgwick cannot blindly follow the Plan

and ignore whether it complies with ERISA.  As noted above, "[i]n every case charging breach

of ERISA fiduciary duty, then, the threshold question is … whether that person was acting as a

fiduciary … when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211,

226 (2000).

And a plan administrator is a fiduciary only if they act in such a capacity in relation to the

plan.  *Pegram* 530 U.S. at 225–26.  The relevant conduct that gives rise to the fiduciary duty

therefore must also be the conduct responsible for the breach of the fiduciary duty.  For example,

Sedgwick cites *Macy's* for the proposition that it rejected "the argument that it is a fiduciary

breach to administer a plan that allegedly violates ERISA by failing to retroactively reimburse

tobacco surcharges."  (ECF No. 18-1 at PageID 75.)  Sedwick is correct because the court in

*Macy's* found that the creation and implementation of the tobacco wellness program were not

actions that gave rise to fiduciary duties.  *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2021

WL 5359769 at *18 (S.D. Ohio Nov. 17, 2021).

The *Macy's* court added that Macy's could not breach any fiduciary duties under ERISA

by engaging in that conduct, even if the program itself violated ERISA.  *Id*.  The *Macy's* court, in

fact, found that the language of § 1104(a)(1)(D) imposes an affirmative fiduciary duty to follow

the plan materials that are consistent with the requirements of ERISA but does not impose an

affirmative obligation to reject any plan materials that are not. *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2022 WL 407238 at *5 (S.D. Ohio Feb. 10, 2022). The same is true here, to the extent that Plaintiff's breach of fiduciary duties claims arise from the creation of the tobacco wellness plan, its implementation according to the Plan terms, or the preparation of any Plan materials and communications, because the Court has found that those actions do not give rise to fiduciary duties under ERISA.

Plaintiff's citation to *Griffin v. Flagstar Bancorp, Inc.* does not change this Court's analysis. *See* No. 2:10-CV-10610, 2011 WL 1261196 (E.D. Mich. Mar. 31, 2011), *rev'd,* 492 F. App'x 598 (6th Cir. 2012). The district court in *Griffin* stated that "[a] fiduciary is not required to, and in fact may not, blindly follow Plan terms if they violate ERISA." *Id.* at *8 (citing *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995)). And this statement is true, but it states that a *fiduciary* may not blindly disregard the requirements of ERISA. An alleged violation of ERISA does not generate a fiduciary duty, but once specific conduct gives rise to a fiduciary duty as it relates to a plan, then that fiduciary may not blindly disregard ERISA. This same analysis replies to Plaintiff's citation to *Fifth Third Bancorp* v. *Dudenhoeffer*. *See* 573 U.S. 409, 421 (2014).

This analysis does not entirely save Sedgwick though, because the Court has found that it was acting in a fiduciary capacity for many of Plaintiff's allegations. First, the Court found that Sedgwick acted as a fiduciary when Plaintiff alleged that it assessed and collected the allegedly unlawful tobacco surcharge. In *Pipefitter's Loc. 636 Ins. Fund*, the Sixth Circuit affirmed a grant of summary judgment on both § 1104(a)(1) and § 1106(b)(1) grounds when an insurance company collected a discretionary fee to satisfy a fee imposed on it by the state. 722 F.3d 861, 867–70 (6th Cir. 2013). Because the insurer was collecting and using plan assets for its own

44

interest, the court sustained summary judgment for the plaintiff.  Plaintiff here plausibly alleged that Sedgwick collected the tobacco surcharge under its discretion in order to use the money to enrich itself at the expense of the Plan.  Plaintiff has therefore plausibly asserted a breach of fiduciary duty for the assessment and collection of the tobacco surcharge.

Second, the Court found that Sedgwick was a fiduciary when it allegedly retained the tobacco surcharge funds at the expense of the Plan.  As noted above, the Sixth Circuit in *Hi-Lex Controls, Inc.* found that allegations of this kind—a fiduciary's use of discretionarily charged fees for its own interest—were enough to affirm a grant of summary judgment.  The *Hi-Lex Controls, Inc.* court also held that the plaintiff's claims warranted summary judgment on both § 1104(a)(1) and § 1106(b)(1) grounds.  Where Plaintiff has plausibly alleged mismanagement of Plan assets at the expense of the Plan here, she has stated a claim for breach of the fiduciary duties imposed by both § 1104(a)(1) and § 1106(b)(1) sufficient to survive a 12(b)(6) motion to dismiss.

Third, the Court found that Sedgwick acted as a fiduciary in its efforts, or alleged lack thereof, to review the Plan materials and its communication of those materials to the Plan participants and their beneficiaries.  Because Plaintiff has plausibly pled that the Plan materials lacked an acknowledgment that Sedwick would accommodate recommendations of the participants' physicians, for this Motion, Plaintiff has also plausibly pled a breach of fiduciary duty under § 1104(a)(1) over Sedgwick's conduct related to the review and communication of Plan materials.  *See Haviland v. Metropolitan Life Ins. Co.*, 730 F.3d 563, 572 (6th Cir. 2013) (emphasis omitted) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 453 (6th Cir. 2002); *Tibble v. Edison Int'l*, 575 U.S. 523, 528–30 (2015).

## CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.  The Court **DISMISSES WITHOUT PREJUDICE** any claim related to the supplemental and dependent life insurance premiums.  Plaintiff's claim that the tobacco surcharge violates ERISA survives, but only because she has plausibly alleged that Plan materials fail to notify participants that a physician's recommendation will be accommodated.  Plaintiff's arguments that Quit for Life is not a reasonable alternative standard or that Sedgwick fails to notify Plan participants of a reasonable alternative standard fail.  The Court DENIES the Motion as to Plaintiff's claims that Sedgwick's assessment and collection of the tobacco surcharge and its retention of the surcharge funds at the expense of the Plan violate fiduciary duties imposed by §§ 1104(a)(1) and 1106(b)(1).  The Court also DENIES the motion over Plaintiffs claims that Sedgwick violated fiduciary duties imposed by § 1104(a)(1) when it allegedly failed to adequately review the Plan materials and communications and failed to include information required by 29 C.F.R. § 2590.702(f)(4)(v).  All other claims that Sedgwick breached fiduciary duties for other conduct are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED**, this 26th day of September, 2025.

   s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE